APPROVED: _____
DANIEL S. GOLDMAN/MICHAEL FERRARA
Assistant United States Attorneys

BEFORE: THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

ORIGINAL
DOC # 2

15 MAG 1996

------------------x

UNITED STATES OF AMERICA      :   SEALED COMPLAINT

          - v. -              :   Violations of:
                                  18 U.S.C. §§ 1343, 1349,
JAMES J. SHEA and             :   and 2.
EUGENE FALLON,
                              :   COUNTY OF OFFENSE:
          Defendants.             NEW YORK
                              :
------------------x

SOUTHERN DISTRICT OF NEW YORK, ss.:

BEMPSEY G. CO, being duly sworn, deposes and says that he is a Special Agent of the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

1. From at least in or about January 2012 up through and including in or about December 2013, in the Southern District of New York and elsewhere, JAMES J. SHEA and EUGENE FALLON, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States of America, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and an object of the conspiracy that JAMES J. SHEA and EUGENE FALLON, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of

executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
## (Wire Fraud)

3.  From at least in or about January 2012 up through and including in or about December 2013, in the Southern District of New York and elsewhere, JAMES J. SHEA and EUGENE FALLON, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, to wit, wire transfers to various bank accounts located in New York, New York, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice to defraud, to wit, SHEA and FALLON caused phony invoices for sham third-party vendor services to be sent to SHEA's employer that resulted in wire transfers of approximately $2.6 million to be sent to bank accounts controlled by SHEA and FALLON.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4.  I am a Special Agent with the FBI.  I have been involved in the investigation of this matter.  I have been a Special Agent with the FBI since 2003, and I have been working on white collar investigations for more than 10 years.  During this time, my responsibilities included the investigation of securities fraud, mail and wire fraud, and other white-collar offenses.

5.  I base this affidavit on that experience, as well as on my conversations with other law enforcement agents and others.  I also base this affidavit on my review of numerous documents, including bank records and emails, in addition to interviews of employees at the American subsidiary of an Australia insurance company ("Company-1") and other individuals.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my

investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## BACKGROUND

6. Based upon my review of documents and records maintained by Company-1, as well as other documents and records I have obtained, I have learned the following:

   a. At all times relevant to this Complaint, Company-1 was located at Wall Street Plaza, 88 Pine Street, New York, New York (the "Company-1 Offices").

   b. At all times relevant to this Complaint, JAMES J. SHEA, the defendant, was employed in the finance, strategy, and/or business operations groups of Company-1, rising to Executive Vice President and Head of Company-1's Finance Transformation Group, which reported to the Chief Financial Officer of Company-1, who served in that role until in or about August 2013 (the "Company-1 CFO").

   c. At all times relevant to this Complaint, SHEA was responsible for, among other things, corporate financial strategy and operations, strategic sourcing and real estate, and/or supervision of multiple administrative departments at Company-1. In or about 2012, SHEA assumed responsibility for integrating the Information Technology ("IT") systems of Company-1's various subsidiaries in North America with that of the parent company in Australia. As part of his duties and responsibilities at Company-1, SHEA received, reviewed, and approved payment to vendors and contractors that provided services to Company-1, as set forth in greater detail below.

   d. At various times from on or about July 19, 2010, through on or about December 31, 2013, EUGENE FALLON, the defendant, worked as a third-party consultant at Company-1 through various vendors, including his own consultant company, Fallon Consultants. As a consultant for Company-1, FALLON served as a project manager working on various technology integration and automation projects with SHEA and others.

   e. As set forth in more detail below, Finance Analytic Corporation ("FAC") was incorporated in Delaware by FALLON. Special Holdings LLC ("Special Holdings") was also a

Delaware corporation incorporated by FALLON. As set forth more fully below, FALLON was the lone signatory on a bank account in the name of Special Holdings, which received wire transfers from Company-1 for work purportedly performed by CIS Group Ltd. ("CIS"), which is not incorporated in the United States.

## THE SCHEME TO DEFRAUD

### Overview

7. As set forth in more detail below, JAMES J. SHEA, the defendant, forged the signature of the Company-1 CFO on contracts between Company-1 and CIS and FAC, respectively. As part of the scheme, EUGENE FALLON, the defendant, who controlled CIS and FAC, submitted fraudulent invoices from those entities to Company-1 for consulting work that was not performed. On behalf of Company-1, SHEA then authorized payment for the invoices in the amount of approximately $2.6 million to bank accounts in the name of FAC and Special Holdings for work purportedly performed by CIS. Of the approximately $2.6 million that SHEA and FALLON embezzled, more than $1.8 million was routed back to SHEA through his wife's bank accounts, while FALLON kept the remainder.

### The Sham Consulting Work

8. Based upon my review of documents and records maintained by Company-1, financial records, and other documents, and interviews with various employees of Company-1, I have learned the following:

    a. At various times relevant to this Complaint, Company-1 hired third-party vendors to assist with a variety of projects, including the integration of software and technology systems among various subsidiaries of Company-1.

    b. CIS and FAC were both third-party vendors ostensibly hired by JAMES J. SHEA, the defendant, and purportedly authorized by the Company-1 CFO to perform technology consulting services for Company-1. In truth and in fact, and as described in further detail below, the Company-1 CFO never authorized either CIS or FAC to do any consulting work for Company-1.

    c. In connection with the services allegedly performed by CIS and FAC, "Statements of Work" were submitted by both CIS and FAC to Company-1 that purport to describe, among

other things, the details of the business engagement, the anticipated deliverables, and the pricing terms.

        d.    Four separate Statements of Work between CIS and Company-1 (the "CIS Statements of Work") set forth the scope of the work that CIS purportedly did, including, in sum and substance, data gathering, integrating technology systems of Company-1 subsidiaries, and other technology services, all of which was expected to be performed at the Company-1 Offices. The CIS Statements of Work were as follows:

        i.    The first Statement of Work had an effective date of February 1, 2012 (the "February 1 CIS Statement of Work"), and a duration of two calendar months at a fixed cost of $190,000. The February 1 CIS Statement of Work was purportedly signed on January 26, 2012, by a "James Shafar" as the "Director" of CIS (on behalf of CIS) and the Company-1 CFO (on behalf of Company-1).

        ii.    The second Statement of Work had an effective date of April 1, 2012 (the "April 1 CIS Statement of Work"), and a duration of two calendar months at a fixed cost of $290,000. The April 1 CIS Statement of Work was purportedly signed on March 27, 2012, by "James Shafar" as the "Director" of CIS (on behalf of CIS) and the Company-1 CFO (on behalf of Company-1).

        iii.  The third Statement of Work had an effective date of July 1, 2012 (the "July 1 CIS Statement of Work"), and a duration of three calendar months at a fixed cost totaling $685,000. The July 1 CIS Statement of Work was purportedly signed on June 19, 2012, by "James Shafar" as the "Director" of CIS (on behalf of CIS) and the Company-1 CFO (on behalf of Company-1).

        iv.   The fourth Statement of Work had an effective date of November 1, 2012 (the "November 1 CIS Statement of Work"), and a duration of three calendar months at a fixed cost totaling $385,000. The November 1 CIS Statement of Work was purportedly signed on October 18, 2012, by "James Shafar" as the "Director" of CIS (on behalf of CIS) and the Company-1 CFO (on behalf of Company-1).

        v.    In total, the CIS Statements of Work required Company-1 to pay CIS a fixed cost of $1,550,000 for 10 months of work.

        e.    Two Statements of Work between FAC and

Company-1 (the "FAC Statements of Work") similarly set forth the purported scope of FAC's assignment, including, in sum and substance, work relating to the integration of the data processing programs of various subsidiaries of Company-1, such as a diagnostic evaluation of this integration, all of which was to be performed at the Company-1 Offices. The FAC Statements of Work were as follows:

        i. The first Statement of Work, dated July 29, 2012 (the "July 29 FAC Statement of Work"), required that FAC receive $400,250 over two months. The July 29 FAC Statement of Work was purportedly signed by a "Hasan Johnson" (on behalf of FAC) and the Company-1 CFO (on behalf of Company-1).

        ii. The second Statement of Work, dated September 19, 2012 (the "September 19 FAC Statement of Work"), required that FAC receive $702,250 over five months. The September 19 FAC Statement of Work was also purportedly signed by "Hasan Johnson" (on behalf of FAC) and the Company-1 CFO (on behalf of Company-1).

        iii. In total, the FAC Statements of Work required Company-1 to pay FAC a fixed cost of $1,102,250 over the course of seven months.

        9. I have spoken with the Company-1 CFO whose signature and title appear on the CIS Statements of Work and the FAC Statements of Work, and have learned, among other things:

        a. In order for a third-party vendor to be approved to perform work for Company-1, Company-1 policies and practices required the Company-1 CFO to review a statement of work and other documentation from the vendor before adding the vendor to an approved list.

        b. The Company-1 CFO was authorized to personally approve any third-party vendor contracts or independent projects that cost up to $1.5 million in the aggregate. For any third-party vendor contracts or independent projects that cost more than $1.5 million in the aggregate, Company-1 required approval from a committee of at least three executives at Company-1.

        c. With regard to CIS, the Company-1 CFO neither has heard of CIS nor recalls any work performed by CIS on behalf of Company-1. The Company-1 CFO did not sign the CIS Statements of Work, and the signature for the Company-1 CFO on

6

the CIS Statements of Work does not resemble the Company-1 CFO's true signature.  Furthermore, the Company-1 CFO has neither heard of anyone with the name of "James Shafar" nor recalls ever seeing any work product provided by a "James Shafar."

    d. With regard to FAC, the Company-1 CFO neither has heard of FAC nor recalls any work performed by FAC on behalf of Company-1.  The Company-1 CFO did not sign the FAC Statements of Work, and the signature for the Company-1 CFO on the FAC Statements of Work is not the same as the Company-1 CFO's.  Furthermore, the Company-1 CFO has neither heard of anyone with the name of "Hasan Johnson" nor recalls ever seeing any work product provided by a "Hasan Johnson."  In addition, the Company-1 CFO has neither heard of anyone who worked at Company-1 named "John O'Sullivan" nor recalls ever seeing any work product provided by a "John O'Sullivan."

    10. I have spoken to the interim successor to the Company-1 CFO (the "Company-1 Interim CFO"), who assumed such employment in or about April 2013 and remained in that position until in or about August 2013, and have learned, among other things:

    a. In or about the summer of 2013, the Company-1 Interim CFO requested that JAMES J. SHEA, the defendant, provide supporting documentation for the consulting work that CIS and FAC, among other consulting companies, purportedly provided to Company-1.

    b. In response to this request, SHEA provided a binder of documents to Company-1 management, which, in fact, did not provide support for the invoices submitted by CIS and FAC and paid by Company-1.

    11. I have obtained documents and records from Company-1 related to the security systems at the Company-1 Offices, I have spoken with an internal investigator at Company-1 ("Company-1 Employee-1"), and from them I have learned the following, among other things:

    a. All employees and consultants working at the Company-1 Offices are given a security identification card ("Company-1 ID Card") that must be used to enter the Company-1 Offices and internal doors within the Company-1 Offices.

    b. Company-1 never issued a Company-1 ID Card to "James Shafar," "Hasan Johnson," or "John O'Sullivan," nor is there any record of anyone by those names entering the Company-1

Offices.

    c. Company-1 never issued a Company-1 ID Card to any other individuals who identified themselves as representatives or employees of CIS or FAC.

### FALLON's Control Over CIS and FAC

    12. Based on my review of documents provided by the Corporation Service Company, which provides registered agent services, including the formation and maintenance of corporations, I have learned the following:

    a. Special Holdings LLC was incorporated in Delaware on March 4, 2010 at the request of EUGENE FALLON, the defendant.

    b. Finance Analytic Corporation was incorporated in Delaware on October 8, 2012, at the request of FALLON as "President," who listed a mailing address in Nanuet, New York (the "FALLON Address"), an email address belonging to FALLON ("FALLON Email Address-1"), and a telephone number ending in -3504 (the "FALLON Phone Number").

    13. I have reviewed emails that were associated with the web addresses "www.cisgroup-ltd.com" (the "CIS Web Address") and "www.financeanalyticcorp.com" (the "FAC Web Address," and together, the "Subject Web Addresses"), which were used to submit invoices to JAMES J. SHEA, the defendant, at Company-1. I have also reviewed documents and spoken with a representative from GoDaddy.com, an Internet domain registrar and web hosting company, and learned the following:

    a. The Subject Web Addresses were opened through an account with GoDaddy.com (the "GoDaddy Account") in the name of EUGENE FALLON, the defendant, who listed as a mailing address the FALLON Address, a Visa credit card in FALLON's name ending in -4080 (the "FALLON Visa Card"), and the email address of efallon@fallonconsultants.com ("FALLON Email Address-2").

    b. At various times from on or about October 30, 2012, through on or about October 22, 2013, an individual using an Internet protocol ("IP") address[1] ("Subject IP Address-

---

[1] An IP address is a numerical label assigned to each device (e.g., computer, printer, phone) participating in a computer network that uses the IP for communication. An IP address

8

1") logged onto the GoDaddy Account.

        c. On or about November 3, 2012, three emails were sent within a four-minute span from "John O'Sullivan" using the email address acctrecv@financeanalyticcorp.com (the "O'Sullivan Email Address") to SHEA at SHEA's Company-1 email address. Each email attached an invoice of services purportedly provided by FAC to Company-1 in July, August, and September of 2012, respectively. These emails were sent using Subject IP Address-1.

        d. On or about April 25, 2013, within a two-minute span, the O'Sullivan Email Address sent two separate emails to SHEA at SHEA's Company-1 email address. Each attached an additional invoice for services purportedly performed by FAC (the "April 2013 Invoices").

        e. At various times from on or about October 22, 2013 through on or about March 3, 2014, an individual using a different Internet protocol ("IP") address ("Subject IP Address-2") logged on to the GoDaddy Account.

        f. On or about December 10, 2013, an individual using Subject IP Address-2 logged on to GoDaddy.com and created the email addresses hasan.johnson@financeanalyticcorp.com (the "Hasan Johnson Email Address") and "james.shafar@cisgroup-ltd.com" (the "James Shafar Email Address").

        g. On or about December 11, 2013, an individual using the name "James Shafar" used Subject IP Address-2 to send an email from the James Shafar Email Address to SHEA at SHEA's Company-1 email address responding to a request by SHEA for supporting materials for the work CIS purportedly performed for Company-1 from February 2012 through January 2013.

        h. On or about December 12, 2013, an individual using the name "Hasan Johnson" sent an email using the Hasan Johnson Email Address to SHEA at SHEA's Company-1 email address responding to a request by SHEA to review the April 2013 Invoices. In this email, "Hasan Johnson" wrote that "there was an overlap in statements of work and the work product that these invoices were charging for was duplicate work product from previous SOW's," and further states that he was "withdrawing" the April 2013 Invoices. The April 2013 Invoices, which totaled approximately $118,000, were never paid by Company-1.

---

serves two principal functions: host or network interface identification and location addressing.

14.  I have reviewed documents obtained from Verizon, which was the Internet service provider for Subject IP Address-1 and Subject IP Address-2 (collectively, the "Subject IP Addresses") during the relevant timeframe, and learned the following:

   a.  The Subject IP Addresses were registered for successive periods to "Eugene Fallon," with user name "eugene.fallon" at the FALLON Address.

   b.  The email address associated with the Subject IP Addresses is "sfallon@fallonconsultants.com."

### The Money Trail to SHEA and FALLON

15.  I have obtained documents, emails and financial records from Company-1, which reveal that between in or about August 2012 and in or about February 2013, CIS and FAC sent invoices to JAMES J. SHEA, the defendant, through various email accounts associated with the Subject Web Addresses.  These invoices requested remuneration in amounts that were nearly identical to the fixed costs enumerated in the CIS Statements of Work and the FAC Statements of Work, as set forth above.  None of these invoices included any supporting documents to validate the work performed, any names of consultants who performed such work, or any time records substantiating such work.  Thereafter, SHEA authorized payments by Company-1 of nine wire transfers to CIS and seven wire transfers to FAC, totaling more than $2.6 million.

16.  I have reviewed documents reflecting the CIS and FAC bank accounts associated with payments received from Company-1 pursuant to the fraudulent invoices submitted to, and approved by, JAMES J. SHEA, the defendant, referenced in paragraph 15 (the "CIS Bank Account" and the "FAC Bank Account," respectively).  I have also reviewed documents from Bank of America related to the CIS Bank Account and documents from JP Morgan Chase related to the FAC Bank Account, and I have learned the following, in part:

   a.  The CIS Bank Account was registered to the entity "Special Holdings LLC" and opened in August 2010, more than one year before the first CIS Statement of Work was signed.  The CIS Bank Account issued one debit card in the name of "Eugene Fallon."

   b.  At all times relevant to the Complaint, the

10

only address associated with the CIS Bank Account was the FALLON Address.

c. At all times relevant to the Complaint, and beginning when the FAC Bank Account was opened on or about October 31, 2012, EUGENE FALLON, the defendant, was identified as "President" and was the sole authorized signatory for the FAC Bank Account. The business address listed for the FAC Bank Account was the FALLON Address.

17. According to financial records and statements, as well as other documents I have reviewed, I have learned that more than $1.8 million -- approximately 68% of the more than $2.6 million that Company-1 paid to FAC and CIS -- was re-routed from the CIS Bank Account and the FAC Bank Account into bank accounts at Bank of America in the name of the wife of JAMES J. SHEA, the defendant (the "SHEA Wife Accounts").

18. Based on my review of the same documents, statements and records, I have learned that, of the remaining money provided by Company-1 to the CIS Bank Account and the FAC Bank Account, some was subsequently transferred as follows:

a. On or about January 16, 2013, a wire transfer of $100,000 was made from the CIS Bank Account to the FAC Bank Account.

b. In or about September and October 2012, three wire transfers totaling $110,000 were made from the CIS Bank Account to a bank account in the Seychelles in the name of "CIS Group Ltd Co."

c. In or about August through October 2012, five checks totaling $66,000 were paid from the CIS Bank Account to an account in the names of EUGENE FALLON, the defendant, and his wife at First Niagara Bank (the "FALLON First Niagara Account").

d. Between on or about November 7, 2012, and on or about February 11, 2013, eight separate transfers totaling $462,800 were made from the FAC Bank Account to an account at JP Morgan Chase in in the name of "Fallon Consultants" (the "Fallon Consultants Account"). FALLON is identified as "President" and is the only authorized signatory for the Fallon Consultants Account.

19. Based on my review of Company-1 documents and

other interviews, I have learned that JAMES J. SHEA, the defendant, received, among other things, a base salary between $240,000 and $350,000 per year from 2008 up through and including 2013, as well as a bonus of $100,000 in both 2011 and 2012, in connection with his employment at Company-1, for a total of approximately $1,870,000 in compensation.

       20.  Based on a review of bank account and other financial records, I have learned that between October 2008 and March 2014, JAMES J. SHEA, the defendant, and/or his wife spent in excess of $4,000,000 using the SHEA Wife Accounts, including, but not limited to, the following purchases:

| Type of Purchase | Amount (Approx.) |
|---|---|
| Home Purchase | $1,000,000 (cash) |
| Purchase of securities | $651,468 |
| Debit Card Purchases | $440,810 |
| Automobiles (3) | $173,215 |
| Furniture | $101,839 |
| Disney Resort | $38,401 |
| Landscaping | $24,194 |
| Apple Store | $18,233 |

       21.  I have reviewed documents related to a securities trading account held in the names of both JAMES J. SHEA, the defendant, and his wife, in addition to a document filed by SHEA's wife with the Department of the Treasury of the State of New Jersey.  In both documents, SHEA's wife's occupation is listed as "homemaker."

WHEREFORE, deponent respectfully requests that warrants be issued for the arrests of JAMES J. SHEA and EUGENE FALLON, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

_____
BEMPSEY G. CO
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me this
__th Day of June 2015

_____
HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK